**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**HARTFORD DIVISION**

| | |
|---|---|
| IN RE: | CHAPTER 7 PROCEEDING |
| SHERI SPEER | CASE NO. 14-21007 |
| Debtor | JUNE 18, 2014 |

## MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS

The Petitioning Creditors, Dr. Michael Teiger, M.D., SLS Heating, LLC and Clipper Realty Trust, Elizabeth Alina, Trustee, (hereinafter, sometimes collectively referred to as "Petitioners"), hereby file this Memorandum of Law in Opposition to the Motion of the Debtor, Sheri Speer (hereinafter, "Speer"), to Dismiss Petitioners Involuntary Petition pursuant to 12 F.R.Civ.P.

STATEMENT OF THE CASE

This involuntary Chapter 7 bankruptcy case was commenced by Petitioners on May 20, 2014 to arrest Speer's five year career as a pro se litigant and to determine what became of many thousands of dollars' worth of rent collected by Speer or her counsel during the period of time that one by one, her various commercial properties have entered foreclosure. To provide historical prospective, Speer has for many years conducted a business of buying and selling rental real estate in New London County and relying substantially if not exclusively on borrowed funds. Attached to this Memorandum marked as Exhibit 1 is a current printout of the 49 law suits to which Speer has been or remains a party. The earliest of these foreclosure actions was filed

1

against Speer in 2006.  A continuous stream of foreclosure and collection activity has followed with new cases commenced as recently as this year.

Attached to this Memorandum marked as Exhibit 2 is a printout of 20 separate appeals from various orders and judgments of the Superior Court taken by Speer to the Connecticut Appellate Court in the last 7 years all of which have been dismissed. These documents show that as of May 20, 2014 Speer was generally not paying her debts as such debts became due within the meaning of 11 U.S.C. § 303(h)(1) and indeed for a period of years prior thereto.

In her motion to dismiss, Speer does not argue that somehow she is in fact paying her debts as they become due.  Instead, she has presented a less than believable argument that none of the Petitioners have claims sufficient to meet the jurisdictional test of § 303.  As will be shown below, Speer's Motion to Dismiss is based on supposition, innuendo and misrepresentation and should be denied.  Petitioners must be given their opportunity to prove the allegations of their Involuntary Petition.  The Petitioners claims are as follows:

I.      Michael Teiger, M.D.

Dr. Michael Teiger holds the claim in the original principal amount of $30,000.00 all of which remains due and owing as evidenced by a Term Note dated March 13, 2009 between Stuart L. Cohen d/b/a Conn & Conn Co.  A true and accurate copy of said Term Note is attached to Affidavit of Stuart Cohen marked as Exhibit A and submitted herewith.  As evidenced by said Term Note, Speer borrowed the sum of $30,000.00 ostensibly from Mr. Cohen who states in his Affidavit that he utilized standard loan documents of Conn & Conn Co. to effect a loan from Dr. Teiger to Speer in the amount

of $30,000.00. As the Term Note further reveals, the note was due and payable March 13, 2011. No part of the principal balance of this Note has been paid. Cohen Affidavit Paragraph 21. Speer last made a payment of interest only in the amount of $300.00 under this Note as of March 13, 2013. Since maturity, the Note according to its terms carries interest of 24%. Even at the original contract rate of 12%, interest in excess of $5,100.00 was past due at the time of the commencement of this involuntary case. Cohen Affidavit Paragraph 21. To date, Dr. Teiger has made no claim for attorney's fees even though the Term Note provides for such.

In her Motion to Dismiss, Speer essentially acknowledges that she owes Dr. Teiger this money. However, she seeks dismissal based on two theories: that because she granted a second mortgage to Conn & Conn Co. to secure the repayment of the loan which mortgage encumbered 3 of her rental properties in Norwich, Dr. Teiger is therefore a secured creditor. Apparently, Speer is not acquainted with the provision of 11 U.S.C. § 303(b)(1) which requires the Petitioners "merely to show that in the aggregate, they hold undisputed claims at least $15,325.00 more than the value of any lien on property of the Debtor securing such claims held by the holders of such claims;". In her Motion to Dismiss and supporting papers, Speer contends that Dr. Teiger has security in properties known as 35-37 Second Street and 371 Laurel Avenue, Norwich, CT. She rightly ignores the fact that the second mortgage also was originally granted on Speer's property at 34 Division Street, Norwich, CT but was foreclosed out as a result of a tax lien foreclosure brought by the City of Norwich. As it happens, the sum of the taxes due and the amount of the first mortgage debt owed to Seaport Capital Partners, LLC exceeded the value of Speer's 34 Division Street property. As evidenced

by the Affidavit, Dr. Teiger is an under secured creditor with respect to Speer's property at 35-37 Second Street and 371 Laurel Hill, Norwich, CT.   Each property is in foreclosure, has been in foreclosure for years.   Attached to the Steven Tavares Affidavit are copies of orders entered in the 371 Laurel Avenue case showing that as of May 14, 2014, the New London Superior Court found the value of that property to be $72,000.00 subject to a total tax debt due the City of Norwich of $22,832.56.   The Affidavit of Steven Tavares, principal of Seaport Capital Partners, LLC asserts that as of the petition date, the unpaid principal debt claimed due on the first mortgage by Seaport Capital Partners, LLC is $146,250.00.   In those circumstances, plainly there is no equity for Dr. Teiger's second mortgage.

Similarly, in another foreclosure action, on May 14, 2014, the New London Superior Court entered a judgment to the effect that the property at 35-37 Second Street, Norwich, CT had a fair market value of $58,000.00 and was subject to a total tax debt due the City of Norwich in the amount of $24,368.38. On May 20, 2014, Steven Tavares of Seaport Capital Partners, LLC claims that the unpaid principal balance due under the Seaport Capital Partners, LLC's mortgage at the petition date was $149,500.00. Plainly, Dr. Teiger is at best an under-secured creditor as it relates to 35-37 Second Street.   At no time during either of these foreclosure actions did Speer present appraisal evidence to the Superior Court contesting the valuations placed on these properties by the appraisers hired by the City of Norwich in the tax foreclosure actions.   Certainly, at a trial on the involuntary petition, Speer would have the right to offer evidence, whether by appraiser or otherwise indicating that the value of these properties is higher than found by the Superior Court.   At this juncture however, the

records of regularly conducted judicial activity in the County of New London demonstrate that Dr. Teiger is fully unsecured.

Speer also attempts to disqualify Dr. Teiger as a petitioning creditor because his attorney in fact, Stuart Cohen, allegedly solicited some sort of sexual favors from Speer herself.  The only evidence she gives is her own statements in her Motion, in the Memorandum of Law in Support of the Motion, and in her own Affidavit.  In addition to this, Speer presents as her Exhibit C a series of alleged text messages that passed between her and Mr. Cohen during the interval of late March 31, 2014 and approximately May 22, 2014.  Read dispassionately, those texts do not support Speer's claim that Cohen was attempting to use the leverage of the Teiger loan to obtain some unauthorized sexual services from her.   Left unsaid by Speer is that she has known Cohen for years before she got the loan in question and in fact had been romantically involved with him for a period of several years.  None of Speer's salacious innuendo or statements support a finding that Dr. Teiger who apparently was not privy to or had any knowledge of the contact alleged by Speer should be deprived of his rights as a creditor.  Speer has offered no evidence that any of these text messages on which she relies are incidental to Cohen's efforts to either collect on Dr. Teiger's loan or otherwise, protect his position.

I suppose it bears mentioning that Speer contends, as she is contended elsewhere, that somehow Dr. Teiger's attorney, Robert Weinstein by making a request that Speer and her attorney (who served for nearly 2 years as Speer's rent receiver) provide a reasonable accounting of the rents collected or not collected during that interval.  As has been shown above, on April 3, 2014, the date of a Court ordered

5

settlement conference attended by Speer, her attorney, Cohen and Weinstein and others, Speer had specifically agreed on the record as had her attorney, Edward Bona that they would provide a complete accounting of property rents in the next 15 days. Within 24 hours, Speer had repudiated that agreement even though it was made a part of the Court record in the presence of the Honorable Emmet L. Cosgrove.   Cohen Affidavit Paragraph 16.

To sum up, Speer has failed to demonstrate that as a matter of law, Dr. Teiger is disqualified from being a petitioning creditor.  The loan was made at Speer's request and has been past due for years.  She may have some sort of claim against Stuart Cohen but that is of no concern to this Court.  Plainly, she can have no claim against Robert Weinstein for simply doing his job attempting to figure out a way that Dr. Teiger could realize a portion of his claim from the rents that Speer pocketed even in the face of a court appointed receivership.  It is the law that even at trial, whether a bona fide dispute exists has to be determined on an objective basis.  See In re: White Birch Turn, LLC, Bankruptcy Case No. 05-25253 formerly pending in this district and decided by the Honorable Robert L. Krechevsky January 30, 2006.  A copy of this decision is attached to this Memorandum as Exhibit 3.  The place for Speer to prove that her "defense" to the claim of Dr. Teiger is bona fide is at trial, certainly not in her moving papers.

## II. SLS Heating, LLC

Essentially, it is Speer's position that even though SLS Heating, LLC is the holder of a Connecticut small claims judgment against her in the amount of $5,137.22, she is confused about the services for which she was billed and that were incorporated into the judgment, somehow the judgment debt of SLS Heating, LLC is subject to a good

6

faith dispute. This argument strains credulity. Submitted with this memorandum is the Affidavit of Ward Kneeland, manager of SLS Heating, LLC of New London, CT. Mr. Kneeland's Affidavit authenticates that on various occasions prior to September 10, 2010, SLS Heating, LLC provided services to Speer in making repairs to various of her properties; that because she failed to pay SLS Heating, LLC for its work, he caused a small claims action to be commenced against Speer on or about May 17, 2013; that Speer was served and thereafter the matter was scheduled for trial on September 17, 2013 at which time Speer neglected to appear. A judgment in the amount of $5,137.22 was thereafter duly entered in favor of SLS Heating, LLC against Speer. As recently as late January 2014, Speer filed a motion to open the small claims judgment but as more than 4 months had passed since the entry of the judgment, said motion was denied and the judgment stands. It may well be at a trial of the involuntary action, Speer might present evidence that would persuade the Court that somehow, there was some defect in the SLS Heating, LLC judgment or in its claim. However, no such defect is apparent from the materials adduced by Speer and accordingly, SLS Heating, LLC is the holder of the claim against Speer not contingent as to liability or the subject of a bona fide dispute as to liability of amount. Having appeared in the Small Claims Action brought by SLS Heating, LLC, filing an answer, seeking continuances, and then when she failed to appear for hearing, filing an out-of-time Motion to Open Judgment, Speer is precluded from relitigating the issue of whether she is lawfully indebted to SLS Heating, LLC in the amount of $5,137.22. See Rodriguez v. Saucier, 108 Conn. App. 599 (2008).

### III.    Clipper Realty Trust

In her Motion to Dismiss and supporting papers, Speer essentially attempts to make the argument as to the Clipper Realty Trust that she never did any business with it and had no relationship with it and never heard from it and so therefore Clipper Realty Trust cannot have any claim against her.  There is no support for this position.

In the first instance, submitted with this memorandum is the Affidavit of Elizabeth Alina, Trustee of the Clipper Realty Trust.  She has demonstrated by documents not subject to challenge that effective March 21, 2013, the Clipper Realty Trust became the owner of Speer's rental property at 35 Rogers Avenue, Norwich, as evidenced by a State of Connecticut Superior Court Foreclosure by Sale Committee Deed recorded on the Norwich Land Records March 21, 2013.  See Exhibit A to the Alina Affidavit. Notwithstanding the fact Speer was divested of title to the property Speer failed to deliver to the Clipper Realty Trust the security deposits that she was required by law to be holding in escrow for the tenants at that property.  For many years, C.G.S. § 47 a-21(h)(3)(A) has provided as follows:

[ ("Whenever any real estate is voluntarily or involuntarily transferred from a landlord other than a receiver, to his successor, including a receiver, such landlord shall withdraw from the escrow account and deliver to his successor the entire amount of security deposits paid by tenants of the property being transferred plus accrued interest provided for in subsection (i) of this section.")    ]

As evidenced by the Alina Affidavit, Speer has never turned over any of the security deposits associated with the property at 35 Rogers Avenue, Norwich, nor has she provided any meaningful accounting as to what became of those security deposits. She simply converted them.

Moreover, Speer somehow arranged to get her hands on the rent being paid for one of the tenants, Ms. Inez Baez for the month of April 2013 in the amount of $638.00 and also for the month of May 2013 in the similar amount. See the checks attached to the Alina Affidavit marked as Exhibit B. In addition, Speer collected from Ms. Baez the self-paid portion of her monthly rent for the same 2 months notwithstanding that this was plainly the property of Clipper Realty Trust. Attached to this memorandum as Exhibit 4 is Speer's letter of April 2, 2013 (also an exhibit in her own moving papers) in which on that date for some inexplicable reason, she contested the Superior Court Deed that had been delivered to the Clipper Realty Trust and recorded on the Norwich land records. By any measure, Speer's dispute regarding the effectiveness of the Clipper Realty Trust Deed was manufactured; receiving and spending the rent due Clipper Realty Trust was the tort of conversion if not civil theft as well. As shown by the Affidavit of Elizabeth Alina the claim asserted in the petition is not subject to a bona fide dispute and in fact, may understate the amount of Clipper Realty Trust's claim against Speer as a result of converted tenant deposits.

## ARGUMENT

I.    Petitioners have satisfied their eligibility to file an involuntary bankruptcy petition.

The three Petitioning Creditors are secured or undersecured Creditors of Speer who in the aggregate are owed non-contingent, undisputed, unsecured claims aggregating to at least $15,325. As such, facially, their petition meets the requirements of Bankruptcy Code Section 303;

**(b)** An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title-

**(1)** by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount....if such noncontingent, undisputed claims aggregate at least $15,325 more than the value of any lien on property of the debtor securing such claims helf by the holders of such claims;

**(2)** if there are fewer than 12 such holders, excluding any employee or insider of such person and any transferee of a transfer that is voidable...., <u>by one or more of such holders that hold in the aggregate at least $15,325 of such claims</u>....

11 U.S.C. § 303 (emphasis added)

In the instant case, Speer does not dispute that she has more than 12 unsecured creditors.   In the circumstances, Petitioners meet the statutory requirement in connection with the number of petitioners.   Thus Petitioners contend that they have satisfied the requirements set forth in 11 U.S.C. § 303(b)(2), and that their petition has been filed in good faith.

A. <u>Petitioners are owed debt which are noncontingent and non subject to a bona fide dispute as to liability</u>

11 U.S.C. § 303(b)(1) sets forth additional requirements which apply to involuntary cases. Specifically, 11 U.S.C. § 303(b)(1) states that a petitioning creditor's debt must be noncontingent. "A claim is contingent as to liability if the debtor's legal duty to pay does not come into existence until triggered by the occurrence of a future event and such future occurrence was within the actual or presumed contemplation of the parties at the time the original relationship of the parties was created." <u>Subway Equip. Leasing Corp. v. Sims(In reSims)</u>, 994 F.2d 210, 220 (5th Cir. 1993) (internal citations omitted). It is plain that the debts owed to Petitioners are noncontingent as to

liability.   In Teiger's case, Speer signed a promissory note and allied documents acknowledging that she was borrowing $30,000.   She has not offered even the suggestion that she has paid this loan back.   Similarly, notwithstanding her alleged claim of confusion, SLS Heating, LLC as a valid Small Claims Judgment against Speer that plainly cannot be characterized as contingent.   On the face of things, Clipper Realty Trust has demonstrated that Speer has failed to tender to it security deposits that Speer was holding or should have been holding under Connecticut Law for the two tenants law, and also, that Speer managed to get her hands on and use rents due to Clipper Realty Trust after it took title to the property at 35 Rogers Avenue.   In all of these circumstances, Petitioners' claims are in good faith, noncontingent, and not subject to any serious defense.

11 U.S.C. § 303(b)(1) further states that a petitioning creditor's debt must not be the subject of a bona fide dispute as to liability of amount.   In determining whether there is a "bona fide dispute" under section 303(b)(1), the court must determine whether there is an objective basis for either a factual or legal dispute as to the validity of the debt. "In re BDC 56 LLC, 330 F. 3d 111, 117 (2d Cir. 2003).   "The reasoning behind the objective standard is that … Congress intended to disqualify a creditor whenever there is any legitimate basis for the debtor not paying the debt, whether that basis is factual or legal." Id. At 117-118.   While a bankruptcy court must determine whether a bona fide dispute exists, "it is not called on to resolve such dispute.   That being said, the court may address the merits of the dispute and it may be required to conduct a limited analysis of the legal issues in order to ascertain whether an objective legal basis for the

dispute exists." In re Stillwater Asset Backed Offshore Fund Ltd., 485 B.R. 498, 505 (bankr. S.D.N.Y. 2013) (quoting In re Rimmell, 946 F. 2d 1363, 1365 (8th Cir. 1991).

Speer must demonstrate that an objective legal basis exists to support her dispute as to liability. This Speer cannot do.  In her Motion to Dismiss, Speer does not raise any serious defect with the Petitioner's claims.  As to the issues that she raises, all require the determination of disputed issues of fact and therefore a trial.

> B.   Speer has failed to demonstrate any basis to reduce the aggregate of Petitioner's noncontingent claims to less than the statutory minimum required for an involuntary case.

Even if Speer at trial can establish that she has bona fide issues with portions of Petitioners' claim, the better rule is that unless she can prove defenses that reduce the undisputed amount of Petitioners' claims to less than $15,325, the court must sustain the involuntary bankruptcy petition.   In the recent cases In re:  EM Equipment, LLC, Case # 12-31073 (JBR) filed by United States Bankruptcy Judge Joel B. Rosenthal on December 30, 2013, the better rule is that so long as Petitioner's can prove at trial " a prima facie case of … debt in the amount in excess of the relevant statutory minimum," there is no bar to the entry of an order for relief.  A copy of Judge Rosenthal's Memorandum of Decision in the EM Equipment, LLC Case is attached to this Memorandum of Law and marked as Exhibit 4.

Finally, it must be said that absent proof as a matter of law that one or more of the Petitioners' claims must fail, the court must either deny or at least continue the Motion to Dismiss until the time of the trial on the involuntary petition.  A motion under Federal Rules of Civil Procedure 12(b)(6) is not meant to take the place of the trial except when there is such a defect as a matter of law.  Here, the test for the

granting of an involuntary petition is whether Speer, at May 20, 2014, was paying her debts as they became due.  Properly, Speer has not attempted to demonstrate that this was so; the record of her pending litigation is just too extensive to sustain the argument that she is anything other than hopelessly insolvent.  All the issues raised by her depend significantly on issues of credibility —- particularly Speer's credibility ----, and so this matter must proceed to trial.

## CONCLUSION

Petitioners respectfully submit that the Court upon a consideration of Speer's Motion to Dismiss, must either deny it or continue it for resolution following an evidentiary hearing on the underlying bankruptcy petition.  In this connection, Rule 12(b)(6) suggests that the Court set a time whereby Speer must file a responsive pleading to the underlying petition and once that is done, a trial may be had.


RESPECTFULLY SUBMITTED,
MICHAEL TEIGER, M.D.
SLS HEATING, LLC
CLIPPER REALTY TRUST,
ELIZABETH ALINA, TRUSTEE,


By: /s/ Patrick W. Boatman
       Patrick W. Boatman, Esq.
       Law Offices of Patrick W. Boatman, LLC
       111 Founders Plaza, Suite 1000
       East Hartford CT 06108
       (860) 291-9061
       pboatman@boatmanlaw.com
       Federal Bar. No. ct05336

UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
HARTFORD DIVISION

IN RE:                                              CHAPTER 7 PROCEEDING

SHERI SPEER                                         CASE NO. 14-21007

        Debtor                                      JUNE 18, 2014

CERTIFICATION OF SERVICE

        I hereby certify that a copy of the Plaintiff's Memorandum of Law In
Opposition To Motion to Dismiss, Affidavits of Stuart Cohen, Steven Tavares, Ward
Kneeland and Elizabeth Alina,  have been sent electronically via the Court's PACER
system to all parties of record with electronic addresses and the U.S. mail, postage
prepaid to the following parties of record:


Sheri Speer
151 Talman Street
Norwich, CT 06360


                            By: /s/ Patrick W. Boatman
                            Patrick W. Boatman, Esq.
                            Law Offices of Patrick W. Boatman, LLC
                            111 Founders Plaza, Suite 1000
                            East Hartford CT 06108
                            (860) 291-9061
                            pboatman@boatmanlaw.com
                            Federal Bar. No. ct05336