UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

-------------------------------------------------------
                                           )
IN RE:                         )       CASE NO. 14-21007 (ASD)
                                           )
SHERI SPEER,               )       CHAPTER 7
                                           )
                DEBTOR.     )       Re: ECF NOS. 1, 61, 70
-------------------------------------------------------

APPEARANCES:

Sheri Speer                            Alleged Debtor, *Pro Se*

Patrick W. Boatman, Esq.            Attorney for Petitioning Creditors,
Law Offices of Patrick W. Boatman LLC    Michael Teiger, MD,
111 Founders Plaza Suite 1000          SLS Heating, LLC, and
East Hartford, CT 06108                Clipper Realty Trust

**MEMORANDUM OF DECISION ON INVOLUNTARY PETITION**

ALBERT S. DABROWSKI, United States Bankruptcy Judge

## I.  INTRODUCTION

In this involuntary Chapter 7 case, the parties have called upon the Court to determine whether the Petitioning Creditors' claims are one, "contingent as to liability," and/or "the subject of a bona fide dispute as to liability or amount" within the meaning of Section 303(b)(1) of Title 11; and whether, Sheri Speer (hereinafter, the "Alleged Debtor") the owner and manager of residential and non-residential real estate primarily located in the Norwich/New London, Connecticut area, is "generally not paying her debts as such debts become due," within the meaning of §303(h)(1).  The Alleged Debtor has also asked the Court to deny the Involuntary Petition on the basis that it was filed in "bad faith," or dismiss or suspend the proceedings pursuant to §305(a).

1

## II.  JURISDICTION

The United States District Court for the District of Connecticut has jurisdiction over the instant matter by virtue of 28 U.S.C. § 1334(b); and this Court derives its authority to hear and determine this proceeding on reference from the District Court pursuant to 28 U.S.C. §§157(a) and (b)(1) and the District Court's General Order of Reference dated September 21, 1984.  This is a "core proceeding" pursuant to 28 U.S.C. §157(b)(2)(A) and (C).

## III.  PROCEDURAL AND FACTUAL BACKGROUND

On May 20, 2014 (hereinafter, the "Petition Date"), Michael Teiger, M.D. (hereinafter, "Dr. Teiger"), SLS Heating, LLC (hereinafter, "SLS"), and Clipper Realty Trust (hereinafter, "Clipper Realty") (heretofore and hereinafter, collectively, the "Petitioning Creditors"), commenced the present bankruptcy case by filing an involuntary Chapter 7 petition (hereinafter, the "Involuntary Petition") against the Alleged Debtor alleging one, that the Petitioning Creditors are eligible to file the petition pursuant to 11 U.S.C. §303(b); two, that the Alleged Debtor is a person against whom an order for relief may be entered under Title 11 of the United States Code; three, that the Alleged Debtor has failed to pay her unsecured debts as they came due to each of the Petitioning Creditors in the amounts of $30,000, $5,137.22 and $3,500, respectively, and four, that such debts are not the subject of bona fide dispute as to liability or amount.  *See* Involuntary Petition, ECF No. 1.

The Alleged Debtor responded to the Involuntary Petition on May 28, 2014, by filing a *Motion to Dismiss* (hereinafter, "Motion to Dismiss")[1], ECF No. 4, and *a supporting*

---

[1]Seeking a dismissal of the Involuntary Petition for "lack of subject matter jurisdiction" and for "failure to state a claim upon which relief can be [granted]". *See* Motion to Dismiss, p. 1.

*Affidavit*, ECF No. 6, wherein the Alleged Debtor asserted, *inter alia*, that the debt to Dr. Teiger is secured by liens on real estate and is in bona fide dispute as to liability and amount; that the debt to SLS is in bona fide dispute as to liability and amount; and that as to Clipper Realty, the Alleged Debtor has no existing liability.  In response, to the Motion to Dismiss, the Petitioning Creditors filed on June 18, 2014 a *Memorandum in Opposition to the Motion to Dismiss* along with Exhibits and Affidavits (hereinafter, the "Memorandum in Opposition"), ECF No. 31.  The Alleged Debtor then responded by filing on June 26, 2014, a *Reply Memorandum to Plaintiff's Opposition to Motion to Dismiss (Doc. 31),* ECF No. 39.  Following a hearing held on June 26, 2014, the Court sustained the Petitioning Creditors' Memorandum in Opposition, ECF No. 41, denied the Alleged Debtor's Motion to Dismiss, set deadlines for the Alleged Debtor to file an answer to the Involuntary Petition and for the Petitioning Creditors to file a reply, and established a trial date for August 5, 2014. *See* Margin Order dated June 26, 2014, ECF No. 40.

On July 16, 2014, the Alleged Debtor filed an *Answer to Involuntary Petition and Special Defenses*, ECF No. 61.  In her defense, the Alleged Debtor represented that the debts owed to Dr. Teiger and SLS were subject to bona fide dispute and that she had no liability to Clipper Realty.  In her First Special Defense, the Alleged Debtor represented, *inter alia*, that her debt to Dr. Teiger was not in default; that any services provided by SLS were not provided to the Alleged Debtor but to a court-appointed receiver of rent or at a time when title to the properties in question had passed to third parties; and that the Alleged Debtor had no obligation to Clipper Realty for security deposits or rent collected from tenants,or that if any such obligation exists, it is contingent in light of tenants' prepetition defaults.  In her Second Special Defense, the Alleged Debtor represented, *inter*

3

*alia*, that the Involuntary Petition was filed in bad faith and for the improper purpose of preventing the Alleged Debtor from prosecuting counterclaims in certain state court foreclosure proceedings brought by Seaport Capital Partners, LLC (hereinafter, "Seaport"), which the Alleged Debtor represented to be an alter-ego of Clipper Realty.  In her Third Special Defense, the Alleged Debtor represented that in light of bankruptcy litigation costs and the unknown value of her counterclaim against Seaport, the parties would be better pursuing payment and asserting defenses to their claims through state court proceedings following a dismissal of the Involuntary Petition pursuant to Bankruptcy Code §305.

On July 24, 2014, the *Petitioning Creditors* filed a *Petitioner's Reply to Proposed Involuntary Debtor's Special Defenses*, ECF No. 70.  In response to the Alleged Debtor's First Special Defense, the Petitioning Creditors stated, *inter alia*, that the debt of Dr. Teiger is unsecured since, while he has a second mortgage on several properties of the Alleged Debtor in Norwich, there is no equity to support the second mortgage.  As to the alleged debt of Clipper Realty, the Petitioning Creditors stated, *inter alia*, that Clipper Realty took title to the property located at 35 Rogers Avenue, Norwich on March 21, 2013, entitling it to monthly rents from tenants for the months of April and May 2013 and, pursuant to Conn. Gen. Stat. §47a-21(h)(3)(A), to tenant security deposits held by the Alleged Debtor as former owner.  As to the alleged debt of SRS, the Petitioning Creditors denied that the services provided were for the benefit of anyone other than the Alleged Debtor.  In response to the Alleged Debtor's Second Special Defense, the Petitioning Creditors, *inter alia*, denied that the Involuntary Petition was filed in bad faith or for an improper purpose. In response to the Alleged Debtor's Third Special Defense, the Petitioning Creditors asserted, *inter alia*, that the Alleged Debtors counterclaim against Seaport would be better

4

evaluated by a neutral bankrutpcy trustee rather than by the Alleged Debtor.

On Friday, August 1, 2014, Seaport filed a *Motion to Join as Co-Petitioner*, (hereinafter, the "Motion to Join"), ECF No. 91, in response to which to which the Alleged Debtor filed *an Objection to Seaport Capital Partners' Motion to Join Petition (Doc. 91)*, ECF No. 93. On Tuesday, August 5, 2014, the Court, following a hearing, granted the Motion to Join, but excluded Seaport from prosecuting the Involuntary Petition at the Trial held that same day as a newly added petitioning creditor with further consideration of the matter in the event an order for relief does not enter because one or more of the original Petitioning Creditors does not meet the requirements of §303(b).[2]

On August 5 and August 27, 2014, the Court conducted the trial (hereinafter, the "Trial") to consider whether an order for relief should enter on the original three Petitioning Creditors' Involuntary Petition, at which time witnesses testified and documents were introduced and admitted into evidence. Thereafter, on September 5, 2014, *Petitioners' Trial Brief* was filed, ECF No. 174; on September 12, 2014, the *Alleged Debtor's Post Trial Brief*, with Exhibits, ECF No. 189, was filed; and on September 16, 2014, *Petitioners' Response to Alleged Debtor's Post Trial Brief*, with Exhibits, ECF No. 194, was filed.

The Court now resolves the issues raised in these pleadings and other filings in the case to the extent they are relevant to its determination herein. The Court has examined and considered the testimony and credibility of the Trial witnesses, the evidence introduced at the Trial, and the arguments of the parties. The Court also notes that the Alleged Debtor has sprayed the record with numerous allegations and objections, many of which are either

---

[2]As the Court will enter a relief order on the Involuntary Petition filed and prosecuted by the original three Petitioning Creditors, it is unnecessary for the Court to consider Seabury as a fourth petitioning creditor for purposes of entry of such relief order.

obviously erroneous and/or irrelevant to the matter before the Court. To the extent these

various and sundry allegations and objections are not specifically discussed hereinafter,

the Court has considered them but determined they have no merit in these proceedings,

or are otherwise irrelevant to the entry of an order for relief on the Involuntary Petition.

## V.  DISCUSSION

### A.    Standards for the Granting of An Order for Relief onThe Involuntary Petition

Involuntary bankruptcy cases are governed by Section 303 of the Bankruptcy Code,

which provides in relevant part:

> (a)  An involuntary case may be commenced only under chapter 7 or 11 of this title, and only against a person . . . that may be a debtor under the chapter under which such case is commenced.

> (b) An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title--

>> (1) by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount . . . if such noncontingent, undisputed claims aggregate at least $15,325 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims;

>> * * *

> (h) If the petition is not timely controverted, the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed. Otherwise, after trial, the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed, only if—

>> (1) the debtor is generally not paying such debtor's debts as such debts become due unless such debts are the subject of a bona fide dispute as to liability or amount. . . .
>> * * *

11 U.S.C. §303 (2014).

### 1.    Whether the Underlying Debts Are Contingent As To Liability or the

***Subject of a Bona Fide Dispute***

The Debtor argues as a part of her First Special Defense to the Involuntary Petition that certain of the Petitioning Creditors hold "contingent" claims.  A petitioning creditor bears the burden of demonstrating that the underlying debt is "not contingent as to liability." 11 U.S.C. §303(b) (2014).   While the Bankruptcy Code does not define the term "contingent," the Second Circuit Court of Appeals has explained that

> [a contingent claim is] one which the debtor will be called upon to pay only upon the occurrence or happening of an extrinsic event which will trigger the liability of the debtor to the alleged creditor and if such triggering event or occurrence was one reasonably contemplated by the debtor and creditor at the time the event giving rise to the claim occurred.

*B.D. Int'l Discount. Co330 F3d 111rp. v. Chase Manhattan Bank, N.A. (In re B.D. Int'l Discount Corp.*, 701 F.2d 1071 (2d Cir. 1983), *cert. denied*, 464 U.S. 830 (1983) (quoting *In re All Media* Props., 5 B.R. 126, 133 (Bankr. S.D.Tex.1980), *aff'd*, 646 F.2d 193 (5th Cir.1981)). *See also In the Matter of Bowers*, 16 B.R. 298, 300 (Bankr. D.Conn. 1981) ("A contingent claim is one where liability attaches upon the occurrence of a future event.").

The Alleged Debtor also claims in her First Special Defense that the Petitioning Creditors' debts are subject to bona fide dispute as to liability or amount.  A debt is subject to "bona fide" dispute if there is "an objective basis for either a factual or a legal dispute as to the validity of [the] debt."  *Key Mechanical Inc. v. BDC 56 LLC (In re BDC 56 LLC)*, 330 F.3d 111,117 (2d Cir. 2003), quoting from *In re Busick*, 831 F.2d 745, 750 (7th Cir. 1987). In *In re BCD 56 LLC,* the Second Circuit Court of Appeals also adopted other courts' "burden-shifting framework" which requires the petitioning creditor to first establish a prima facie case that no bona fide dispute exists and thereafter, shifts the burden to the debtor to demonstrate the existence of such a dispute.  "Because the standard is objective,

neither the debtor's subjective intent nor his subjective belief is sufficient to meet this burden" and "the court's objective is to ascertain whether a dispute that is bona fide exists; the court is not to actually resolve the dispute. *In re] Rimell*, 946 F.2d [1363], at 1365 [(8th Cir. 1991)]." *In re BDC 56 LLC*, 330 F.3d at 118.

### a. The Claim of Clipper Realty

At Trial, Clipper Realty provided the credible testimony of Elizabeth Alina, principal of Clipper Realty supported by Exhibits K through W, consisting of state court pleadings, dockets and orders evidencing the fact that a judgment of foreclosure by sale entered on June 6, 2012; that following the sale, title to the property located at 35 Rogers Avenue, Norwich, Connecticut passed from the Alleged Debtor to Clipper Realty by a State of Connecticut Superior Court Foreclosure by Sale Committee Deed recorded on the Norwich Land Records on March 21, 2013;[3] that appeals had been dismissed and appellate stays previously lifted[4]; that notwithstanding the transfer of ownership, the Alleged Debtor solicited and accepted rent totaling $1,276.00 from at least one tenant, Inez Baez Rivera living on the property for the months of April and May 2013 and failed to turn over to Clipper Realty the rent. It was also established that the Alleged Debtor failed to turn over a security deposit she held with respect to another tenant, Terry Williams, in the amount of $1,200. While the total amount established, $2,476.00, is less than the $3,500 originally claimed in the Involuntary Petition (the difference between the monetary amount established at Trial and the original amount conceded to be in bona fide dispute), this

---

[3]Notwithstanding the Alleged Debtor's argument to the contrary, the subsequent motion filed by the City of Norwich on March 25, 2013, seeking a supplemental judgment that was accompanied by a mislabeled "Motion for Judgment of Foreclosure By Sale, did not affect the passing of the title.

[4]In an order dated October 3, 2012, the state court lifted the stay of execution pending appeal because "any appeal would be taken for purpose of delay." Pl. Ex. U.

Court concurs generally with the reasoning of the courts in *In re EM Equipment, LLC*, 504 B.R. 8 (Bankr. D. Conn. 2013) and *In re DemirCo Holdings, Inc.*, No. 06-70122, 2006 WL 1663237 *3 (Bankr. C.D. Ill. June 9, 2006), and determines that unless a bonafide dispute as to a portion of the amount has the potential to reduce total amount not in bonafide dispute below the §303(b) statutory threshold after taking into account the claims of other petitioning creditors, the amount disputed is not relevant either to the Court's determination of either the creditor's eligibility to be a petitioning creditor or of the Involuntary Petition itself.

The Alleged Debtor also argues that the debt is contingent because there has been no finding by a court determining that a specific amount is due.  However, there is no requirement in §303 that the claim has been liquidated and the Alleged Debtor has cited no legal or case authority for that proposition.  See *In re DemirCo Holdings, Inc.*, 2006 WL 1663237 at *3 ("[t]he statute does not, on its face, require a petitioner to hold a liquidated claim.").  Further, with respect to the security deposit, Conn. Gen. Stat. §47a-21(h)(3)(A) mandates that such funds, which are required to be held in an escrow account, be turned over to the successor landlord "w]henever any real estate is voluntarily or involuntarily transferred from a landlord." Finally, while the Alleged Debtor argues that Clipper Realty did not make adequate demand for payment of its claims, in *In re Kingston Square Assocs.*, 214 B.R. 713, 731 (Bankr. S.D.N.Y. 1997), the court stated:

> [w]hether the Petitioning Creditors were pressing for payment of their claims or had even sent the Debtors a statement of account is irrelevant to the issue of whether they hold valid claims.  *In re Manchester Lakes Assocs.*, 47 B.R. 798, 801 (Bankr. E.D. Va. 1985) (failure of parties to make demand for payment unnecessary where debts have been shown to be outstanding more than 30 days); *In re Rimell*, 111 B.R. 250, 253 (Bankr. E.D. Mo. 1990) (party's failure to send a bill to debtor is of little consequence to status as

creditor), *aff'd*, 121 B.R. 253 (E.D. Mo. 1990), *aff'd*, 946 F.2d 1363 (8th Cir. 1991).

In sum, after careful review of the record, the Court finds that Clipper Realty has satisfied its burden of proving it holds a noncontingent claim of $2,476.00 that is not in bona fide dispute as to liability or amount. Those liabilities became noncontingent when the title to the property passed and the Alleged Debtor failed to turn over the rents and security deposit on or about March 21, 2013.

### b. The Claim of Dr. Teiger

In her unsuccessful efforts to convince this Court that the debt of Dr. Teiger is contingent or in bona fide dispute as to liability, the Alleged Debtor has made conflicting, irrelevant and in some cases imprudent[5] statements. The facts, which clearly weigh against her, are clear.

On March 13, 2009, a loan for $30,000, Pl. Ex. Z, was made to the Alleged Debtor by Stuart Cohen d/b/a Conn & Conn Co. of West Hartford, Connecticut (hereinafter, "Cohen") secured by a second mortgage on three investment properties owned by the Alleged Debtor in Norwich, Connecticut and located at 34 Division Street, 371 Laurel Hill Avenue and 35-37 Second Avenue. Pl. Ex. BB. The note and mortgage required an interest only payment of $300 a month, followed by a "balloon payment" due March 31, 2011. Because the funds necessary for the loan came from Dr. Teiger, a business associate of Cohen, on April 24, 2009, the mortgage deed was assigned to him and duly recorded. Pl. Ex. CC. Conn & Conn continued to exclusively service and collect the

---

[5]The Alleged Debtor has focused an inordinate amount of attention on a series of e-mails, some salacious, sent by Stuart Cohen, the originator of the second mortgage loan later assigned to Dr. Teiger, to the Alleged Debtor. *See* discussion, *infra* pp. 18-19, Def. Ex. F.

mortgage payments.  On March 13, 2011, the note matured and became due and payable in the amount of $30,000 plus any unpaid accrued interest.  Until then the Alleged Debtor had made regular monthly payment of $300.  Pl. Ex. FF.

Because upon the maturity of the loan the Alleged Debtor was unable to make the balloon payment required, Dr. Teiger agreed to extend it for twelve months to March 13, 2012, subject to payment of a $1,200 extension fee, of which $800 was paid.  After the expiration of the extension period, the Alleged Debtor failed to pay off the loan although she continued to make sporadic monthly payments with the last payment made December 24, 2013, which was applied to the payment due March 13, 2013.  Cohen attempted to obtain further payment of the debt by sending payment requests to the Alleged Debtor but was unsuccessful.  Pl. Exs. HH and II.  As of the Petition Date, the balance due on the note was no less than $34,500 (based upon the principal of the note, plus accrued, unpaid annual interest of 12% for fourteen months), plus $400 for the unpaid balance of the extension fee.

While the loan was made with the expectation that it was secured by liens on certain of the Alleged Debtor's properties, by the Petition Date the property at 34 Division Street had been foreclosed in state court by the City of Norwich, and following a sale to Clipper Realty, there were no proceeds remaining after payment of senior encumbrances, including taxes owed to Norwich and a first mortgage loan from Seaport, to satisfy any of Dr. Teiger's secured debt.

Further, as to the Alleged Debtor's interest in 371 Laurel Hill Avenue, in a strict foreclosure judgment entered May 14, 2014, Conn. Sup. Ct Doc. No. KNLCV106004291S,

the fair market value of the property was determined to be $72,000.[6]  Pl. Ex DD.  In

credible testimony by Peter Marsele (hereinafter, "Marsale") at the Trial, he indicated that

on the basis of an appraisal he did on July 22, 2014, based upon an exterior inspection,

the property had a fair market value of only $42,000.  On the basis of those values and

evidence presented indicating the amount of prior encumbrances exceed $169,000, there

is no equity remaining to satisfy any of the Teiger debt.

Likewise, with respect 35-37 Second Street, in a strict foreclosure judgment entered

May 14, 2014, Conn. Sup. Ct. Doc. No. KNLCV-106004290S, the fair market value of the

property was determined to be $58,000.  Pl. Ex. EE.  Marsale also appraised this property

on July 22, 2014, and testified that based upon an exterior inspection, the property had a

fair market value of $39,000.  On the basis of those valuations and evidence presented

indicating the amount of prior encumbrances exceed $173,000, there is no equity

remaining to satisfy any of Dr. Teiger's debt.

The Alleged Debtor failed at Trial to introduce any evidence to refute the valuations

of the two properties although she stated that she was requesting permission of the state

court to have new interior appraisals done.  Marsale, however,  testified that even if he had

conducted interior appraisals which showed improvements had been made on the

properties, that his appraisals would not have changed.  Since one property was built in

1915 and the other in 1870, he assumed for purposes of the appraisals that the properties

had been improved and were in "average" condition.

According to Bankruptcy Code §303(b)(1), petitioning creditors must show only that

---

[6]The foreclosure actions as they concern 371 Laurel Hill Avenue and 35-37 Second Street were
instituted by Seaport, the first mortgagee.

they hold noncontingent, undisputed claims that "*aggregate at least $15,325 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims*" (emphasis added).   Therefore, the mere remaining existence of the mortgage when, in this case, there is no equity, makes the mortgage irrelevant in the determination of eligibility.

Finally, while the Alleged Debtor does not dispute that she received a $30,000 loan from Dr. Teiger (and made payments on the loan for almost four years), she argues that the mortgage documents are invalid because they lack a necessary signature. This position is inconsistent with her First Special Defense contained in her Answer to Involuntary Petition . . . in which she stated, "Mr. Teiger's interests are secured by liens on real property known as 35-35 (sic) Second Avenue and 371 Laurel Hill Avenue in Norwich, Connecticut," ECF No. 61, and with the statements made in her Memorandum of Law . . . , ECF No. 5 ("Teiger's alleged debt is not unsecured.  It is secured by liens on real property. . . .").  Further, the Alleged Debtor has not cited any legal or statutory authority for the proposition that the absence of that signature makes the mortgage invalid and not subject to be cured, and in any case, the allegation is irrelevant to the issue presently before the Court.  Dr. Teiger is not seeking to foreclosure on the mortgage and the secured debt is effectively unsecured in any case.   The liability is not contingent.  *See, e.g. Pearl-Phil GMT (Far East) Ltd. v. Caldor Corp.*, 266 B.R. 575, 582 (S.D.N.Y. 2001) (a claim that is contingent becomes noncontingent upon performance or breach).  The debt became non-contingent when the loan as extended was not fully paid when finally due on March 13, 2012 and no further loan extension was granted.

### c.  The Claim of SLS

The claim of Petitioning Creditor, SLS is the most straight forward and least subject to dispute.  In fact, in the Alleged Debtor's Post Trial Brief, ECF No. 189, p. 18, she as much as acknowledges the legitimacy of the liability when she states, "SLS Heating LLC presents the only claim that may closely resemble a debt not subject to bona fide dispute as to liability or amount."   The Alleged Debtor also acknowledged that SLS obtained a judgment against her in a small claims action, Conn. Sup. Ct. Doc. No. SCC-493966, in the amount of $5,137.22, Pl. Ex. E.  As testified to by Christine Bliven, office manager of SLS, the debt arose from heating work performed at the request of the Alleged Debtor at her properties on various dates between January 14, 2012 and September 10, 2012, and remains unpaid.

In light of the above, the Court finds that the claims of Clipper Realty, Dr. Teiger and SLS which totaled no less than $42,513.22 as of the Petition Date, are sufficient to satisfy the requirements of §303(b)(1) that the petition be filed by at least three creditors whose undisputed, noncontingent, unsecured claims are in the aggregate at least $15,325.

### 2.     *Whether the Alleged Debtor is Paying Her Debts As They Fall Due*

Bankruptcy Code Section 303(h)(1) provides, *inter alia*, that the Court shall order relief against the debtor in an involuntary case only if "the debtor is generally not paying such debtor's debts as such debts become due. . . ."  In making such a determination, this Court has explained it as follows: "The Court must first undertake a rough calculus of the number and amount of the Alleged Debtor's delinquent and current debts on the petition date. The Court then utilizes the results of that calculus to determine if the ratio of delinquent to current debts is supportive of a pattern of 'generally not paying'. *In re Palace Oriental Rugs, Inc.*, 193 B.R. 126, 129 (Bankr. D.Conn. 1996)."  *In re Jacques*, No. 09-

22027, 2010 Bankr. LEXIS 2499 *21 (Bankr. D. Conn. July 23, 2010).

The "rough calculus" is not easily determinable in this case, since no schedules have been filed and the Debtor has been particularly unwilling to respond to direct questioning about her debt, as evidenced by her performance at Trial where she dodged and/or attempted to dodge virtually every question propounded by the Petitioning Creditors' attorney as to what debts she is or is not paying. As a consequence, in arguing that the Alleged Debtor is not paying her debts as they fall due, the Petitioning Creditors are relying primarily on the existence of dozens of lawsuits, mostly foreclosure proceedings that have been and are presently pending in the Connecticut Superior Court. The Petitioning Creditors' argument is buttressed by the numerous relief from stay motions that have been filed and considered by this Court since the bankruptcy filing, each one evidencing the Alleged Debtor's nonpayment of debt and lack of equity in any of the properties.

The Alleged Debtor has not seriously contested this aspect of the Involuntary Petition and in her Trial testimony reluctantly admitted that she has not been making payments on the majority of her mortgage debt totaling about 3 million dollars and that the majority of her properties are in various stages of foreclosure. As examples, at least three properties were lost in foreclosure for failure to pay Norwich taxes. Another property in New London was lost for failure to pay town taxes. Her testimony that the reason she was not paying the Seaport mortgages (which instituted its foreclosure of nine properties for non-payment in 2012) and the majority of her other mortgages was because they are in mediation or receivership, is not credible. She did not testify or introduce any evidence suggesting that the foreclosures which precipitated the receiverships or mediation were filed for any reason other than for nonpayment.

The Court is thus comfortable in concluding that the Alleged Debtor is generally not paying her debts as they come due.

**B.**     **Whether the Involuntary Petition Was Filed in Bad Faith**

Having determined that the Petitioning Creditors were eligible to file the Involuntary Petition pursuant to Section 303(b), the Court now turns to the Alleged Debtor's argument contained in her Second Special Defense that the Involuntary Petition should be denied or dismissed on the grounds that it was filed in bad faith.  As a threshold matter, there is a presumption that an Involuntary Petition was filed in good faith.  *See, e.g., U.S. Fidelity & Guar. Co. v. DJF Realty & Suppliers, Inc.*, 58 B.R. 1008 (N.D.N.Y. 1986); *In re E.S. Professional Services, Inc.*, 335 B.R. 221 (Bankr. S.D. Fla. 2005).   Good faith is exemplified in the present matter by the aforementioned compliance of the Petitioning Creditors with the requisites of Section 303(b).

The Debtor bears the burden of showing, by a preponderance of the evidence, that the Involuntary Petition was filed in bad faith.  "Because 'bad faith' is not defined in the [B]ankruptcy [C]ode, and because there is no legislative history addressing the intended meaning of this language, courts have used different approaches to determine whether a petition was filed in bad faith for purposes of § 303(i)(2) (citation omitted)." *Lubow Machine Co., Inc., v. Bayshore Wire Products Corp.*, 209 F.3d 100, 105 (2nd Cir. 2000).  In this case, while throwing out many allegations, the Alleged Debtor seems to be essentially arguing that the Petitioning Creditors are acting for an "improper purpose" because the "filing of the petition was motivated by ill will, malice, or a desire to embarrass or harass the alleged debtor" *Lubow* at 105, and constitutes an "improper use" because the Petitioning Creditors are using "involuntary bankruptcy procedures in an attempt to obtain a

16

'disproportionate advantage' for [themselves], rather than to protect against other creditors obtaining disproportionate advantages, particularly when the petitioner could have advanced its own interests in a different forum."  *See also*; 2 Collier on Bankruptcy ¶303.16[1] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).

The Alleged Debtor focused her argument that the petition was for an "improper purpose" on the fact that there had previously been a personal relationship between Cohen, the servicer of Dr. Teiger's mortgage, and herself, causing Cohen  to be "openly hostile" and therefore having improper motives in suggesting to Dr. Teiger that he become a Petitioning Creditor.  She notes two pieces of evidence in support of her argument.  First, she cites excerpts from emails exchanged between her and Cohen in the weeks before the bankrutpcy filing.   However, in the Court's view, while sexually suggestive and inappropriate on Cohen's part, the emails do not suggest any hostility (" Wat a burnin desire and my heart is on fire", Def. Ex. 10-A.).  She also cites as evidence of an improper motive his testimony at trial in which he stated, in effect, that if presented with a choice between his receiving payment of the full $30,000 debt or have her go through the bankruptcy, he would chose the latter.  Rather, than demonstrating his bad faith, however, it evidences that the bankrutpcy filing was not intended as leverage to get Dr. Teiger's individual debt paid which could be evidence of bad faith.  *See Atlas Mach. & Iron Works v. Bethlehem Steel Corp.*, 986 F.2d 709, 716 (4th Cir. 1993) (sole petitioning creditor's concession that it filed the Involuntary Petition to collect a debt supported the Bankruptcy Court's finding of bad faith).

As further evidence of bad faith, the Alleged Debtor argues that the three Petitioning Creditors colluded to place her in bankrutpcy. The only evidence adduced at Trial however,

is that the possibility of the filing was discussed by representatives of Seaport with each of the three Petitioning Creditors and that Seaport bore related expenses. That alone is insufficient to establish bad faith where as here, there is no evidence that the purpose of the filing was for a fraudulent or deceitful purpose. "[B]ad faith will not normally be found where the primary motivation of petitioning creditors was to prevent further dissipation of assets through foreclosure in an attempt to facilitate an orderly workout among all the creditors. *In re Kingston Square Assocs.*, 214 B.R. at 736.

Although the Debtor has attempted to argue that this is essentially a one creditor case – *i.e.*, a plot by Seaport through its proxies[7] to undermine her defenses in state court to its foreclosure proceedings and gain leverage in order to stymy her efforts to resolve legitimate disputes, the facts as established show that not only are the debts of the Petitioning Creditors legitimate but that the Alleged Debtor has numerous other foreclosure actions pending in the state court involving creditors other that Seaport. She managed various businesses and collected rents but thus far, has failed to account for the rents that were collected during the time she was not paying mortgages and other debts. Obtaining information about missing or unexplained assets is a legitimate goal in filing an involuntary bankrutpcy petition. Further, her argument that the instant bankruptcy case was filed in order to delay a foreclosure trial during which the Alleged Debtor intended to prosecute her counterclaims against Seaport, is refuted by the fact that just one day before the trial was set to proceed on May 22, 2014, the Alleged Debtor, unaware that the Involuntary Petition

---

[7]At the Trial, the Alleged Debtor presented no evidence in support of her argument that Clipper Realty was the alter ego of Seaport.

had been filed a day earlier in this Court, moved herself to postpone that trial.[8]  *See* Pl. Ex. NN.

The Alleged Debtor has also sought damages from the Petitioning Creditors for their alleged bad faith.  However, as §303(i) indicates, damages thereunder for bad faith are only available "[i]f the court dismisses a petition under this section . . . ."  Because as concluded below, the Involuntary Petition will not be not dismissed, damages for bad faith are unavailable under this section and shall be denied.  *See In re Palace Oriental Rugs, Inc.*, 193 B.R. at 130.

## C.    Whether the Court Should Suspend or Dismiss the Petition Under §305(a)(1)

The Alleged Debtor argues in her Third Special Defense, particularly as it concerns SLS but also with respect to the other Petitioning Creditors, that the Court should abstain[9] from determining the Involuntary Petition under Bankruptcy Code §305(a)(1),[10] and allow matters to proceed in state court.  However, as is readily apparent from a review of the docket of the SLS small claims case and of other cases, the Alleged Debtor although ostensibly *pro se*, has a very extensive knowledge of Connecticut state court and appellate practice and has used that knowledge to conduct an overly litigious and generally baseless defense to the various (mostly foreclosure) proceedings pending against her in furtherance of her abusive agenda, which is to retain ownership of her properties through delay, obfuscation (particularly as it concerns the whereabouts and disposition of her assets,

---

[8]That trial was intended to consider simultaneously the nine foreclosure cases that had been filed by Seaport in 2012.

[9]While the heading of 305(a)(1) is captioned " Abstention," the body of the section refers to the "dismissal or suspension" of all proceedings in a case.

[10]This section permits the dismissal of a pending case if "the interests of creditors and the debtor would be better served by such dismissal. . . ."

including rents collected), and intimidation of her opponents by forcing them to run up inordinate amounts of attorneys' fees in their attempts to recover their properties and mitigate their losses.

As it relates to SLS, illustrating the Alleged Debtor's ability to draw out proceedings even where the issues are not seriously in dispute,[8] following SLS' filing of its small claims action on May 17, 2013, she appeared, filed an answer and counterclaim, requested and obtained a delay of the trial which she thereafter failed to attend, and then, after judgment was entered for the Plaintiff, tardily filed a motion to reopen the judgment, which was subsequently denied by the Court on February 24, 2014, Pl. Exs. D and F.

Equally revelatory as to her motives in seeking a suspension or dismissal under §305(a) is a review of the Connecticut Superior Court Judicial Branch Case Look Up which indicates that the Alleged Debtor is a defendant in approximately thirty eight (38) lawsuits, a plaintiff in approximately ten (10) others and a party to at least twenty (20)[9] appeals, in all of which, except for one, she is the appellant.  The vast majority of these appeals concern foreclosure proceedings, most were filed during the years 2012 through 2014 (although some date back five years or more) and except for the few that remain pending, were disposed of adverse to the Alleged Debtor.

A suspension or dismissal under §305(a) is generally considered to be an extraordinary proceeding, appropriate only in very rare circumstances, and where, by the clear language of subsection (a)(1) "the interests of creditors *and* the debtor would be

---

[8]At Trial, it became quickly apparent that the special defenses arrayed against the SLS' claim were specious and easily discredited.

[9]At least one of the appeals concern more than one state court proceeding; for example, *Seaport Capital Partners v. Speer,* AC 34394, concerns nine separate foreclosure lawsuits.

better served by such dismissal or suspension." (Emphasis added).  *See In re Paper I Partners, L.P.,* 283 B.R. 661, 678 (Bankr. S.D.N.Y. 2002).  The Alleged Debtor here has not shown how any creditor would be benefitted by a dismissal or suspension in a way that would provide for a just and equitable resolution of the related issues.  Moreover, the benefit to the Alleged Debtor of a dismissal or suspension here would only provide her with a platform to continue her delaying tactics in state court.

In this matter, abstention or dismissal of the Involuntary Petition as permitted by §305(a) would clearly not serve the interests of creditors.  In fact, as argued by the Petitioning Creditors, the appointment of Chapter 7 Trustee will allow another party to cut through all the related litigation, step in and provide for an orderly review of the Alleged Debtor's assets and liabilities, and where it is in the interests of the bankruptcy estate, arrange for their liquidation in an efficient and economic fashion.  *See In re RCM Global Long Term Capital Appreciation Fund, LTD*, 200 B.R. 514, 525 (Bankr. S.D.N.Y. 1996) ([a]mong other factors in considering a dismissal under §305, "economy and efficiency of administration" is a "primary consideration.").

## V.  SUMMARY AND ORDER

For the reasons set forth above, and upon consideration of the Involuntary Petition seeking entry of an order for relief under Chapter 7 of the Bankruptcy Code pursuant to §303(h), following trial thereon:

**IT IS HEREBY ORDERED** that -- a separate Order for Relief shall immediately enter, and

**IT IS FURTHER ORDERED** that the Alleged Debtor's request for dismissal of the Involuntary Petition, or suspension of these proceedings under Bankruptcy Code §305(a),

is **DENIED,** and

 **IT IS FURTHER ORDERED** that Alleged Debtor's requests for damages, punitive

damages, costs and fees, is **DENIED**.

Dated: November 11, 2014                                    BY THE COURT


                                                            Albert S. Dabrowski
                                                    United States Bankruptcy Judge