UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
NEW HAVEN DIVISION

| | | |
|---|---|---|
| In re: | : | Case No.: 14-21007 (AMN) |
|     SHERI SPEER, | : | Chapter 7 |
|     *Debtor* | : | |
| | : | |
|     SEAPORT CAPITAL PARTNERS, LLC, | : | |
|     *Movant* | : | |
| v. | : | |
|     SHERI SPEER, | : | |
|     *Respondent* | : | |
| | : | Re: ECF No. 1121 |

## MEMORANDUM OF DECISION AND ORDER DENYING MOTION FOR CONTEMPT

***Appearances***

| | |
|---|---|
| Donna R. Skaats, Esq. | *Counsel for Movant*, |
| 210 West Town Street, 2nd Floor | *Seaport Capital Partners, LLC* |
| Norwich, CT 06360 | |
| | |
| Sheri Speer | *Respondent/Debtor* |
| 151 Talman Street | *Proceeding Pro Se* |
| Norwich, CT 06360 | |

### I.   INTRODUCTION

Before the court is a motion filed by a secured creditor, Seaport Capital Partners, LLC ("Seaport") seeking to hold the Chapter 7 debtor, Sheri Speer ("Debtor"), in contempt for violating an Order[1] prohibiting her use of cash collateral ("Contempt Motion"). ECF No. 1121. Specifically, Seaport requests a sanction requiring the Debtor to pay $26,600.00 – an amount allegedly equal to rent received from April 2015 through August 2016 plus a security deposit including last month's rent for property located at 12 Rogers

---

[1] On March 27, 2015, Judge Dabrowski granted Seaport's Motion to Prohibit the Use of Cash Collateral as it pertained to 12 Rogers Avenue, Norwich, Connecticut ("Cash Prohibition Order"). ECF No. 479.

Avenue, Norwich, Connecticut ("Roger Avenue Property"). ECF No. 1158. After consideration of the docket of this case and the parties' evidentiary submissions and arguments, I find Seaport failed to meet its burden to show it is entitled to sanctions by clear and convincing evidence pursuant to 11 U.S.C. § 105(a).

## II.    PROCEDURAL HISTORY

The court assumes the parties' familiarity with the long and complicated history of this Chapter 7 case and provides only a brief summary of the events relevant to consideration of the Contempt Motion.

On May 20, 2014, creditors, Michael Teiger, M.D., SLS Heating, LLC, and Clipper Realty Trust commenced this bankruptcy case by filing an involuntary Chapter 7 petition (the "Involuntary Petition") against the Debtor. The court (Dabrowski, J.) granted Seaport's motion to join the Chapter 7 case a co-petitioning creditor, but excluded it from prosecuting the Involuntary Petition. ECF No. 219, p. 5. After several hearings regarding the Involuntary Petition, the court (Dabrowski, J.) entered an Order for Relief on November 11, 2014. ECF Nos. 219, 220.[2]

Slightly less than two months later, on January 5, 2015, the court (Dabrowski, J.) granted the Debtor's motion seeking conversion of her involuntary Chapter 7 case to a case under Chapter 11. ECF Nos. 297, 306. During the Chapter 11 phase of this case, on March 3, 2015, Seaport moved for an order prohibiting the Debtor from using of any of its cash collateral[3] – in the form of rents received – from tenants of the Rogers Avenue

---

[2]    The Debtor timely appealed the Order for Relief. ECF Nos. 236, 287. On February 18, 2015, following the conversion to Chapter 11, the District Court dismissed her appeal as moot. *See,* Case No. 3:14-cv-1912; ECF No. 408.
[3]    Seaport attached a copy of its mortgage containing an assignment of rents provision to its motion. ECF No. 447-2, p. 4 of 8.

2

Property.[4]  ECF No. 447.  After a hearing, the court (Dabrowski, J.) granted Seaport's request and prohibited the Debtor's use of cash collateral relating to the Rogers Avenue Property – entering the Cash Prohibition Order – on March 27, 2015.  ECF No. 479.

Around the same time in March of 2015, Seaport filed a motion seeking to reconvert the case to a Chapter 7 case, asserting the Debtor's unauthorized use of cash collateral as one basis for conversion.  ECF No. 457.  Over the Debtor's objection requesting dismissal, the court reconverted her case to Chapter 7 on April 24, 2015, and Thomas Boscarino was appointed as Chapter 7 Trustee ("Trustee").  ECF No. 515.[5]  A month after the conversion to Chapter 7, on May 29, 2015, Seaport initiated adversary proceeding Case No. 15-2031 challenging the Debtor's right to a discharge pursuant to 11 U.S.C. §§ 727(a)(2)(A), 727(a)(2)(B), 727(a)(4), and 727(a)(5).  That adversary proceeding was resolved by a final, non-appealable order that deprived the Debtor of her bankruptcy discharge.  *See*, Case No. 15-2031, ECF No. 641.

### *Seaport & Chapter 7 Trustee Negotiations*

Shortly after being appointed in 2015, the Trustee filed a notice proposing to abandon the bankruptcy estate's interest in twenty-nine (29) properties – including the Rogers Avenue Property – pursuant to 11 U.S.C. § 554(a).  ECF No. 529.  Seaport objected asserting the Trustee should refrain from abandoning certain properties because certain creditors were interested in purchasing the bankruptcy estate's interest in those

---

[4]     At the time of the Order for Relief, it is undisputed the Debtor was the record owner of the Rogers Avenue Property.

[5]     The Debtor appealed the Order reconverting her case to Chapter 7.  ECF No. 532.  On June 18, 2015, the District Court dismissed her appeal, Case No. 3:15-cv-646, as premature because a motion to reconsider was pending.  ECF No. 655.  After reconsideration, on July 23, 2015, the court (Nevins, J.) granted – again – Seaport's motion to reconvert the case to Chapter 7.  ECF No. 684.  The Debtor also appealed this ruling.  *See,* ECF No. 692, 740, 777; Case No. 3:15-cv-646.  The District Court affirmed the ruling.  *See*, ECF No. 1576.

properties. ECF No. 577. Seaport unabashedly acknowledged it wanted to acquire the estate's interest in order to eliminate the Debtor's interest and cut off her ability to participate – and delay – certain state court foreclosure proceedings. ECF No. 577.[6] After negotiations between Seaport and the Trustee, Seaport withdrew its objection to abandonment of certain properties, and on July 24, 2015, the Trustee abandoned sixteen (16) properties, which, as relevant here, did not include the Rogers Avenue Property.[7] ECF Nos. 660, 662, 663.[8]

On August 28, 2015, the Trustee moved for approval of a settlement with Seaport that compromised the bankruptcy estate's interest in the Debtor's claims against, among others, Seaport. ECF No. 725. Specifically, the Trustee proposed dismissing the Debtor's claim pending in an adversary proceeding against Seaport and its managing member, Steven Tavares, and stipulating to judgment in favor of Seaport and against the Debtor as to her counterclaims asserted in nine (9) superior court cases. *See*, ECF No. 725, P. 8; Adv. Proc. No. 15-2003. As part of the settlement, the Trustee agreed to quit claim the Rogers Avenue Property to Seaport. ECF No. 725, P. 7. In exchange, Seaport agreed to pay the bankruptcy estate $20,000, to bear the cost of all taxes and fees incurred as a result of the title transfer, and to cap its claim for administrative expenses. ECF No. 725. On November 10, 2015, the court granted the motion to compromise (the "Seaport Compromise"). ECF No. 851.

---

[6]   In the objection to the Trustee's notice of abandonment, Seaport alleges the Debtor had a history of filing frivolous pleadings in order to delay state court foreclosure proceedings. ECF No. 577.
[7]   To be clear, at this point in time – July 2015 – no foreclosure action was pending by Seaport involving the Rogers Avenue Property. *See*, ECF No. 725, Par. 27.
[8]   Thereafter, the Debtor moved to compel the Trustee to abandon the remaining properties as the Trustee originally proposed. ECF No. 719. The motion to compel was denied. ECF No. 851.

In her customary fashion, the Debtor moved for reconsideration of the Seaport Compromise, which the court denied.  ECF Nos. 858, 1198.  She then sought – through multiple filings and amendments – reconsideration of the denial of the motion to reconsider.  *See*, ECF Nos. 1246, 1265, 1271, 1287, 1397, 1402, 1412, 1417.  All in all, the last Order denying the Debtor's several motions to reconsider the Seaport Compromise entered on July 28, 2017.  ECF No. 1417.

### *Motion for Order to Show Cause & Sanctions*

Shortly after the court approved the Seaport Compromise, on December 12, 2016, Seaport filed the instant Contempt Motion seeking an order directing the Debtor to show cause why sanctions should not be assessed against her for allegedly collecting rents in contravention of the Cash Prohibition Order.  ECF No. 1121.  Even though the case had been converted to Chapter 7, Seaport sought enforcement of the Cash Prohibition Order which entered during the Chapter 11 phase of the case.  The Debtor objected asserting no rents had been collected or used since the entry of the Order.  ECF No. 1135.  An evidentiary hearing to determine if there was a sufficient basis to order the Debtor to show cause was held on January 17, 2017 (the "Initial Evidentiary Hearing").[9]  ECF No. 1159.

During the Initial Evidentiary Hearing, Seaport presented evidence in the form of testimony by Cordelia Feliciano (the "Tenant").  The Tenant testified she resided at the Rogers Avenue Property paying a monthly rent of $1,400.00 to the Debtor or to a Mr. Carlos Rivera on the Debtor's behalf during the time period of May 2015 through August 2016. ECF No. 1159 at 00:40:24 – 00:40:29; 00:42:36 – 00:43:00; 00:45:00 – 00:46:50.  The Tenant further testified she signed a lease in April 2014 and paid the Debtor a total

---

[9]    During an initial hearing held on December 19, 2016, Seaport requested a continuance to allow it the opportunity to present evidence in support its motion.  ECF No. 1136 at 00:06:20 – 00:10:57.

5

amount of $4,200 for first and last month's rent and a security deposit ($1,400.00 each). ECF No. 1159 at 00:40:57 – 00:41:19; 00:45:00 – 00:46:50. Despite testimony that she paid rent every month of 2015 and until August 2016, the Tenant admitted she was late some months and had no records reflecting any payments. ECF No. 1159 at 00:45:30 – 00:46:30, 00:46:30 – 00:46:45; 00:48:25 – 00:48:30. The Debtor failed to present evidence during the Initial Evidentiary Hearing.

Following the Initial Evidentiary Hearing, Seaport filed a statement summarizing the Tenant's testimony and indicating the rent paid to the Debtor from April 2015 through August 2016 totaled $23,800.00. ECF No. 1158.

Two days later, on January 19, 2017, Attorney Vincent Fazzone, counsel appearing on behalf of the Debtor,[10] contended the scope of her defense would be she never collected any rent and all the money went to the Chapter 7 Trustee. Attorney Fazzone indicated he would present evidence from the Debtor's accountant and the Debtor. However, the Debtor refused to testify except by affidavit due to an unspecified medical condition. The court directed Attorney Fazzone to provide medical records substantiating the Debtor's inability to testify in person and to file a motion to seal any medical records by March 15, 2017. ECF No. 1160.

Shortly thereafter, on January 24, 2017, the court issued a Scheduling Order and Order directing the Debtor to show cause (the "Show Cause Order") why she should not be held in contempt for violating the Cash Prohibition Order, and providing her with an opportunity to pursue her stated defenses. ECF No. 1164. The Show Cause Order

---

[10] On August 2, 2016, the court granted Attorney Fazzone's motion seeking admission *pro hac vice* to represent the Debtor. *See*, ECF No. 1081, 1082. His representation of the Debtor terminated on April 21, 2017. ECF No. 1259.

6

scheduled an evidentiary hearing for April 6, 2017 (the "Show Cause Order Hearing"), set a discovery deadline of March 15, 2017 and a deadline of March 15, 2017 for any motion seeking a determination of the Debtor's unavailability due a medical condition. ECF No. 1164.

A little over a week later, on February 6, 2017, Attorney Fazzone filed his first motion to withdraw as counsel for the Debtor, which was denied for procedural deficiencies. *See*, ECF Nos. 1167, 1170. His second motion to withdraw was superseded by a third amended motion, which the court ultimately granted on April 21, 2017. *See*, ECF Nos. 1184, 1242, 1259.

The Show Cause Order Hearing did not proceed on April 6, 2017. The court extended the discovery deadline to May 4, 2017[11] and continued the hearing to May 16, 2017.[12] The Show Cause Order Hearing was further continued to June 13, 2017 upon the request of the Debtor, now proceeding *pro se*, for additional time to retain new counsel. *See*, ECF Nos. 1273, 1274.

Thereafter on June 2, 2017, the Debtor again sought an extension of all deadlines and hearings for a period of sixty (60) days while she sought new counsel. The court denied these requests and later denied all of the Debtor's subsequent requests to vacate and/or reconsider the orders denying such requests. *See*, ECF Nos. 1317, 1318, 1322, 1323, 1329, 1330, 1346, 1347, 1361, 1362, 1380, 1381, 1385, 1386, 1405, 1406.

---

[11] Before his representation was terminated, Attorney Fazzone filed a motion seeking a three-week extension of the discovery deadlines and a notice indicating – again – the Debtor's defense would be she did not receive any rent after March 27, 2015. *See*, ECF No. 1188, 1189. The court extended the discovery deadline to May 4, 2017. ECF No. 1258.

[12] On April 5, 2017, the day prior to the Show Cause Hearing, a hearing was held in the adversary proceeding, Case No. 15-2031. During that hearing, the court *sua sponte* continued the Show Cause Hearing to May 16, 2017. Attorney Skaats representing Seaport indicated it had no further evidence to present in support of the Show Cause Order. ECF No. 1228 at 00:26:40 – 00:30:40.

The day before the Show Cause Hearing, the Debtor requested yet another continuance based upon unspecified and unsubstantiated medical grounds. ECF No. 1340. The court denied the request. ECF No. 1352. During the Show Cause Hearing, Seaport noted it provided $20,000 to the Trustee and the deed transferring title of the Rogers Avenue Property to Seaport had been recorded pursuant to the Seaport Compromise.[13] ECF No. 1341 at 00:12:20 – 00:13:25. Despite obtaining title to the Rogers Avenue Property, Seaport confirmed that it still sought sanctions against the Debtor for her receipt of rents for the period of April 2015 through August 2016 and that it was resting on the evidence presented during the Initial Evidentiary Hearing. ECF No. 1341 at 00:15:44 – 00:17:00; 00:23:58 – 00:24:20. In response to the court's questioning regarding what effect, if any, the conversion to Chapter 7 had on its request for sanctions, Seaport was unsure and acknowledged that, upon the conversion, the rents might be considered property of the estate. ECF No. 1341 at 00:17:00 – 00:19:12. Following the Show Cause Hearing, a Scheduling Order entered providing Seaport and the Debtor with deadlines for any additional memoranda of law in support or opposition to the Show Cause Order. ECF No. 1358.

In its memorandum in support of sanctions, Seaport requested a sanction totaling $26,600.00 representing the rent from April 2015 through August 2016 and including the Tenant's payment of a security deposit and last month's rent. ECF No. 1367, p. 8. Seaport acknowledged it never sought relief from the automatic stay in order to pursue its state law remedies as to the Rogers Avenue Property. ECF No. 1367, p. 5. In her opposition memorandum, the Debtor repeated her unproven defense that she never

---

[13] Following the Show Cause Hearing, Seaport filed a copy of the deed as recorded on the land records on May 19, 2017. ECF No. 1367-1.

8

received any rent from the Rogers Avenue Property.  ECF No. 1379.  Seaport replied asserting the Debtor's arguments should be disregarded due to her failure to present evidence despite numerous opportunities to do so.  ECF No. 1401.

While the Debtor failed to present evidence, the court takes judicial notice of its own docket and record.  *See,* Fed.R.Evid. 201.  During the Debtor's § 341 Meeting of Creditors[14] on February 25, 2015, the Debtor testified she held three (3) security deposits for properties other than the Rogers Avenue Property.  ECF No. 645, p. 28, 29.  As to the Rogers Avenue Property, the Debtor testified it was a single-family home rented at a monthly rent of $1,350.  ECF 645, P. 43.  The Debtor testified the tenant at that time was late for the month of February 2015.  ECF No. 645, p. 43-44.

Additionally, during a hearing held on June 4, 2015, the Trustee indicated the Debtor had turned over six (6) checks for rents paid in May of 2015 for various properties, but the properties were not identified.  ECF No. 639, p. 34.  The Trustee also testified during the trial in adversary proceeding case number 15-2031, that when he had asked the Debtor to turnover rent checks, she did.  AP-ECF No. 629, p. 99, L. 5-7.  However, the Trustee did not indicate the amount or source of the rent checks.  The Debtor testified during the same trial that "[w]hen the Trustee took over the properties, every – everyone stopped paying the rent and then I had to do evictions.  So they just didn't pay for the time, like a year straight."  AP-ECF 629, p. 183, L. 19-22.

Also, during a December 19, 2017 hearing in the Chapter 7 case, the Trustee indicated he was holding $15,242.29 originating from the Debtor's People's United Bank

---

[14]   Seaport filed a copy of the § 341 Meeting Transcript on the docket as ECF No. 645.

9

accounts he had closed in May of 2015 and from $5,800 in rent checks turned over by the Debtor from various tenants in May of 2015.  ECF No. 1775, p. 44.

### III.   APPLICABLE LAW

#### *Sanctions Pursuant to 11 U.S.C. § 105(a)*

Section 105(a) of the Bankruptcy Code provides, in relevant part,

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code].[15]
> 11 U.S.C. § 105(a).

It is well established, "that [§] 105(a) limits the bankruptcy court's equitable powers, which must and can only be exercised within the confines of the Bankruptcy Code" and does not authorize a bankruptcy court "to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity."  *In re Kalikow*, 602 F.3d 82, 96–97 (2d Cir. 2010).  "[I]n exercising [its] statutory and inherent powers, a bankruptcy court may not contravene specific statutory provisions."  *Law v. Siegel*, 571 U.S. 415, 421 (2014).  "Thus, § 105 does not itself create a private right of action, but a court may invoke § 105(a) if the equitable remedy utilized is demonstrably necessary to preserve a right elsewhere provided in the Code."  *Bessette v. Avco Fin. Services, Inc.*, 230 F.3d 439, 444–45 (1st Cir. 2000), *amended on denial of reh'g* (Dec. 15, 2000)(*internal citations omitted*);  See also, *In re Man Kit Ng*, 11-46867-CEC, 2018 WL 3956608, at *2 (Bankr. E.D.N.Y. Aug. 14, 2018)("§ 105 may provide a basis to impose sanctions, but only against bad-faith conduct and only when it is tied to a specific provision of the Bankruptcy Code, rather than to further the purposes of the Code generally ... and not merely [tied] to a general bankruptcy concept or objective.")(*quoting In re Smart World*

---

[15]   The Bankruptcy Code is found in Title 11, United States Code.

*Techs., LLC*, 423 F.3d 166, 184 (2d Cir. 2005)). "The statutory contempt powers given to a bankruptcy court under § 105(a) complement the inherent powers of a federal court to enforce its own orders." *In re Kalikow*, 602 F.3d at 96 (*citing Int'l Union, UMWA v. Bagwell*, 512 U.S. 821 (1994)). "[B]ecause of their very potency, inherent powers must be exercised with restraint and discretion." *In re Kalikow*, 602 F.3d at 97 (*citing Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991)). "The party seeking to hold another in civil contempt has the burden of establishing a willful violation, which it must show 'by clear and convincing evidence.'" *In re TS Empl., Inc.*, 597 B.R. 494, 536 (Bankr. S.D.N.Y. 2019)(*citing In re Manchanda*, 2016 WL 3034693, at *4 (Bankr. S.D.N.Y. May 19, 2016)).

## ***Cash Collateral & Post-Petition Rents***

Section 363(a) defines "cash collateral" as "cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest." 11 U.S.C. § 363(a). Cash collateral also includes proceeds, products, offspring, rents, or profits of property in which the entity has a security interest. *See*, 11 U.S.C. § 363(a); 3 *Collier on Bankruptcy* ¶ 363.03 (16th). In relevant part, § 363(c)(2) provides that a trustee or debtor in possession may not use, sell or lease cash collateral without either (1) the consent of the creditor with an interest in the collateral or (2) court authorization, granted after notice and a hearing. 11 U.S.C. § 363(c)(2); 3 *Collier on Bankruptcy* ¶ 363.03 (16th). In a Chapter 7 case, § 363(c)(4) requires a trustee to segregate and account for any cash collateral in the trustee's possession, custody or control and in the absence of authorization to use cash collateral, the trustee is responsible for maintaining the collateral. 11 U.S.C. § 363(c)(4); 3 *Collier on Bankruptcy* ¶ 363.03 (16th).

As explained by the Second Circuit, property acquired after the commencement of the bankruptcy case is generally not considered property of the estate, but under § 541(a)(6), "after-acquired property will vest in the estate if it is derived from property that was part of the estate at the commencement of the bankruptcy." *Chartschlaa v. Nationwide Mut. Ins. Co.*, 538 F.3d 116, 122 (2d Cir. 2008)(internal quotation marks omitted). "[I]f the debtor retains an interest in the property generating post-petition proceeds, the proceeds from that property are likewise property of the estate." *In re S. Side H., LLC*, 474 B.R. 391, 405 (Bankr. E.D.N.Y. 2012); *In re Koula Enterprises*, 197 B.R. 753, 759 (Bankr. E.D.N.Y. 1996)("rents are [] property of the estate pursuant to 11 U.S.C. § 541").[16]

## IV. DISCUSSION

In the instant request, Seaport seeks a $26,600.00 sanction against the Debtor for violating the 2015 Cash Prohibition Order entered while this was a Chapter 11 case. In support, Seaport relies solely upon the testimony of the Tenant, who testified she paid the Debtor[17] $1,400.00 a month from April 2015 through August 2016, when she then vacated the Rogers Avenue Property.[18] ECF No. 1367, p. 8.

---

[16] *See also, Leeber Realty LLC v. Trustco Bank*, Docket No. 17-CV-2934 (KMK), 2019 U.S. Dist. LEXIS 20885, at *23 (S.D.N.Y. Feb. 8, 2019) ("An absolute assignment of rents prepetition does not necessarily mean that the estate has no interest in the rents for the purposes of a § 541 analysis. Even if the mortgagee had an absolute assignment, rather than a pledge which required further action, it would not follow that the debtor's interest in the rent was totally cut off.")(internal citations and quotations omitted); *See also, In re Vienna Park Properties*, 976 F.2d 106, 114 (2d Cir. 1992)("Because the Banks had not yet gained the right to enforce that security interest, they are not entitled to collect the rents. Rather, the rents should be sequestered and subject to protection as cash collateral under section 363 and the terms of the rent assignment clauses."); *See also, In Re Eternal Enterprises, Inc.*, Case No. 14-20292 (AMN), Opinion and Order Authorizing Use of Cash Collateral, ECF No. 308 (Bankr.D.Conn. December 15, 2015).

[17] The Tenant also testified she paid a Mr. Carlos Rivera on the Debtor's behalf. The Tenant did not identify how much was paid directly to the Debtor versus Mr. Carlos Rivera.

[18] The $26,000.00 figure also includes the Tenant's payment of last month's rent and a security deposit ($1,400.00 each). ECF No. 1367, p. 8.

However, the Tenant was unable to substantiate her testimony with any documentation. Additionally, she admitted she was often late in paying. In February of 2015 during the Debtor's § 341 Meeting, the Debtor stated the tenants at the Rogers Avenue Property were late in paying for that month. Additionally, the Debtor testified she only held three security deposits, which did not include a security deposit for the Rogers Avenue Property. ECF No. 645, p. 28, 29. After consideration of the Tenant's testimony and the other evidence in the record of this case, I am unpersuaded that Seaport has met the clear and convincing standard required for sanctions under § 105(a). While the testimony of one witness without any documentary support may have sufficed for entry of the Show Cause Order, it is insufficient for an award of sanctions pursuant to § 105(a). I remain troubled by the Tenant's credibility and the veracity of her paying over twenty-thousand dollars without any records.[19] I find there is a lack of convincing evidence that the Debtor received either the security deposit or all the rent from April 2015 through August 2016. Without clear and convincing evidence of the Debtor's receipt of the funds, I decline to enter a sanction under § 105(a). *In re TS Empl., Inc.*, 597 B.R. 494, 536 (Bankr. S.D.N.Y. 2019)("The party seeking to hold another in civil contempt has the burden of establishing a willful violation, which it must show by clear and convincing evidence."). Accordingly, I find Seaport failed to meet its burden demonstrating sanctions should be awarded for a violation of the Order Prohibiting Use of Cash Collateral.

Besides the lack of evidence, the equities of this case do not compel the entry of sanctions. First, the Cash Prohibition Order entered during the Chapter 11 phase of the

---

[19] I note the Tenant testified there were numerous issues with the Rogers Avenue Property including lack of electricity and that her family was forced to leave by the Norwich Health Department. *See*, ECF No. 1159 at 00:40:24 – 00:47:00. This testimony suggests a contentious relationship between the Tenant and the Debtor which may have biased the Tenant's testimony.

case and Seaport failed to address what, if any, effect the conversion to Chapter 7 had on this request for sanctions. *See*, ECF No. 1341 at 00:17:00 – 00:19:12. Specifically, Seaport failed to explain why, upon conversion, the rent from the Rogers Avenue Property would not be considered property of the estate subject to the control of the Chapter 7 Trustee. *See*, *In re S. Side H., LLC*, 474 B.R. at 405 ("[I]f the debtor retains an interest in the property generating post-petition proceeds, the proceeds from that property are likewise property of the estate.").

After the reconversion to Chapter 7 in 2015, Seaport could have sought relief from the automatic stay in order to exercise whatever state law remedies it may have had against the Rogers Avenue Property, including enforcement of its mortgage or its assignment of rents. Or, Seaport could have arguably sought adequate protection regarding its interest in the ongoing, post-conversion rents. However, Seaport preferred to negotiate with the Trustee to obtain the Roger Avenue Property through the Chapter 7 process. Unfortunately, that process lasted from 2015 through 2017.

Given the unpersuasive nature of the evidence, and, the fact that Seaport chose its remedy by failing to seek relief from stay or other available relief after the conversion to Chapter 7, I am unpersuaded Seaport is entitled to further relief or that the proper remedy is an award of sanctions. Under the circumstances of this case, I decline to impose sanctions for rent that may have been collected during this time particularly considering the lack of convincing evidence.

Given the protracted history of litigation between these parties and the failure of proof on the relevant issues raised by the Motion, I find there is no purpose to entering a monetary sanction against the Debtor, and that equity does not support it.

### VII.    **CONCLUSION**

After careful consideration of the evidence, the record of the bankruptcy case, and the parties' arguments, I conclude Seaport has failed to meet its burden of proof to establish by clear and convincing evidence that a sanction should be imposed against the Debtor pursuant to 11 U.S.C. § 105(a).  I have considered all other arguments raised by Seaport and conclude none are persuasive or supported by the record.  Accordingly, Seaport's Contempt Motion is denied.

This is a final order subject to traditional rights of appeal, with a fourteen (14) day appeal period.  *See*, Fed.R.Bankr.P. 8001, *et seq.*, Fed.R.Bankr.P. 8002(a)(1); *Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 140 U.S. 582 (Jan. 14, 2020).

**NOW THEREFORE**, it is hereby

**ORDERED**: That, the motion seeking sanctions against the debtor, Sheri Speer, ECF No. 1121, filed by Seaport Capital Partners, LLC, is DENIED.

Dated this 12th day of June, 2020, at New Haven, Connecticut.



Ann M. Nevins
United States Bankruptcy Judge
District of Connecticut